BAKER, *Appellant,*
*v.*
LANE COUNTY, *Respondent.*
(No. 72-4580, CA 6284)
558 P2d 1247

Gregory G. Foote, Eugene, argued the cause and filed the briefs for appellant.

Richard Bryson, Eugene, argued the cause for respondent. With him on the brief were Calkins & Calkins and Bryson & Robert, Eugene.

Before Schwab, Chief Judge, and Thornton and Richardson, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

In this action to recover damages for personal injuries, plaintiff appeals from a judgment of involuntary nonsuit.

In 1972 plaintiff, then aged eight, was with his parents attending an "Indian Powwow" in the Arena Building at the Lane County Fairgrounds when he was attracted by the sound of a motorcycle. He left fairgrounds property through a gate adjacent to the Arena Building to investigate, and re-entered the fairgrounds through another, less frequently used gate some distance away. He approached a chain-link fence within the fairgrounds area which paralleled the fairgrounds border for some distance. The fence did not form an enclosure and was accessible to the plaintiff from either side. Plaintiff reached through this section of fence, and tugged on a rope tethering a horse to the other side. A motorcycle backfired and the horse reared, causing the middle three fingers of plaintiff's left hand to be severed by the fence.

Plaintiff brought suit against both Lane County, defendant here, which owns and operates the fairgrounds, and the State Board of Higher Education, which leased the Arena Building for the powwow. Plaintiff elected not to plead further after a demurrer to his fourth amended complaint was sustained, and appealed to this court. We held that the State Board of Higher Education was immune from liability for plaintiff's injuries, but that Lane County was not, and remanded the case for trial. *Baker v. State Bd. of Higher Ed.,* 20 Or App 277, 531 P2d 716, Sup Ct *review denied* (1975).

After plaintiff concluded the presentation of his case upon remand, the court granted a judgment of involuntary nonsuit, holding that plaintiff was a trespasser upon defendant's property when the injury occurred and that as plaintiff had not met all the requirements of the attractive-nuisance doctrine, sometimes referred to as the child-trespasser doctrine,

no jury question had been raised. Plaintiff appeals, contending that the evidence established that he was an invitee rather than a trespasser, and that even if he were to be considered a trespasser, he met the requirements of the attractive-nuisance doctrine.

Plaintiff's status when he was injured defines the nature of the duty owed by defendant to plaintiff. If plaintiff was a trespasser and failed to meet the requirements of the attractive-nuisance doctrine, then defendant was required to refrain only from wilfully and wantonly injuring plaintiff, *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966); *Akerson v. D. C. Bates & Sons, Inc.,* 180 Or 224, 174 P2d 953 (1947). If plaintiff meets the requirements of the attractive-nuisance doctrine,[1] then the duty owed him was that of reasonable care. *Wheeler v. City of St. Helens,* 153 Or 610, 58 P2d 501 (1936). Similarly, if plaintiff was an invitee, defendant owed him a duty of reasonable care. *Mickel v. Haines Enterprises, Inc.,* 240 Or 369, 400 P2d 518 (1965).

When this case was previously before us, we concluded that, based solely upon the pleadings, it appeared that plaintiff's injury occurred outside of the

---

[1]In order to warrant the application of the attractive-nuisance doctrine and to establish liability for an injury caused to a child trespasser by an artificial condition on land, a plaintiff must show that

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children." Restatement of Torts (Second) § 339 (1965), quoted in *Loney v. McPhillips,* 268 Or 378, 380-81, 521 P2d 340 (1974); *Baker v. State Bd. of Higher Ed.,* 20 Or App 277, 288-89, 531 P2d 716 (1975).

arena and its area of normal ingress and egress, and that consequently plaintiff's status was that of a trespasser and he could recover only through application of the attractive-nuisance theory. We now conclude, for reasons stated below, that our prior conclusion was premature in that the evidence below establishes that plaintiff's status was that of an invitee.

■ Two tests are used in Oregon to determine whether an individual has the status of an invitee. The first test, known as the economic-benefit theory, accords invitee status upon one who enters premises upon business which concerns the occupier, with the occupier's express or implied assent. *Rich v. Tite-Knot Pine Mill, supra.* The second test, known as the invitation test, would term a person an invitee

> "* * * if the occupier, expressly or impliedly, has led such person to believe that the premises were intended to be used by visitors for the purpose which plaintiff is pursuing and that such use was not only acquiesced in by the occupier but was in accordance with the intention or design with which the place was adapted and prepared * * *." *Parker v. Hult Lumber & Plywood Co.,* 260 Or 1, 8, 488 P2d 454 (1971).

*See also* W. Prosser, Law of Torts § 61 (4th ed 1971); James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees,* 63 Yale L J 605 (1954).[2] Proceeding under the invitation theory, there have been a number of cases, both in Oregon[3] and in

---

[2]The definition in the Restatement of Torts of an invitee is similar in effect to the alternative application of both the economic benefit and invitation theories:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement of Torts (Second) § 332 (1965).

[3]*Arney, Gohn v. City of North Bend,* 218 Or 471, 344 P2d 924 (1959); *Wheeler v. City of St. Helens,* 153 Or 610, 58 P2d 501 (1936); *Hise v. City of North Bend,* 138 Or 150, 6 P2d 30 (1931).

other jurisdictions,[4] which hold that when a public body maintains and occupies land or facilities which are open to the public, then all members of the public who use the land or facility for the purposes for which they are held open have invitee status.

Here the manager of the fairgrounds testified that the fairgrounds were generally open to the public, that there were no times when the grounds were closed except during the night hours, and that many people go through the fairgrounds property looking at flowers and attending functions held in the various buildings. He further testified that even though he anticipated that children would attend the powwow, no areas were designated off limits to the patrons of the powwow. The fairgrounds, then, were maintained in a fashion somewhat similar to a city or county park—freely open to the public for general use and enjoyment. One who enters the fairgrounds for a use consistent with the maintenance of the fairgrounds, as did plaintiff, enters with invitee status. Consequently, defendant owed plaintiff a duty of reasonable care; a duty not to be negligent, either through affirmative acts or through the lack of affirmative acts.

Defendant contends that there is no evidence in the record from which a jury could reasonably conclude that it was negligent. We disagree. Defendant rents stalls to persons who wish to board their horses at the fairgrounds. Though the manager of the fairgrounds testified that horse owners were on occasion orally warned not to leave their horses unattended when the horses were outside a show ring or their stalls, that admonition was not included in the written rules delivered to those renting stalls. On the day of the

---

[4] *See,* e.g., *Ehlinger v. State,* 237 NW2d 784 (Iowa 1976); *Watts v. Town of Homer,* 301 So2d 729 (La App 1974); *Teaney v. City of St. Joseph,* 520 SW2d 705 (Mo App 1975); *Caldwell v. Village of Island Park,* 304 NY 268, 107 NE2d 441 (1952); *City of Anadarko v. Swain et ux,* 42 Okla 741, 142 P 1104 (1914); *Paraska v. Scranton,* 313 Pa 227, 169 A 434 (1933); *Treps v. City of Racine,* 243 NW2d 520 (Wis 1976); *Ramirez v. City of Cheyenne,* 34 Wyo 67, 241 P 710 (1925). *See generally,* W. Prosser, Law of Torts § 61 (4th ed 1971).

powwow, no instructions were given to horse owners not to leave their horses unattended in the yard. Failure to provide or enforce adequate regulations to ensure that one user of public property will not negligently injure an invitee can form a basis for relief. *See Caldwell v. Village of Island Park,* 304 NY 268, 107 NE2d 441 (1952). Further, defendant did not require that animals and people be kept separate. In *Chance v. Ringling Bros.,* 257 Or 319, 478 P2d 613 (1970), the failure to keep a dog on a leash away from the area frequented by invitees was actionable. There is evidence from which a jury could find the defendant negligent. Since we find that plaintiff was an invitee, we need not consider the question of whether a tethered horse could constitute an "artificial condition" on land justifying application of the attractive-nuisance doctrine.

Defendant urges us to conclude that plaintiff was contributorily negligent. Though the record may provide a basis for such a finding by the jury, we cannot say as a matter of law either that plaintiff was contributorily negligent or that if he were his fault exceeded that of defendant's.[5]

Reversed and remanded.

---

[5] *See* ORS 18.470.