Argued and submitted February 27, reversed in part, affirmed in part and remanded July 8, Ciba-Geigy's reconsideration denied August 28, Kaiser Foundation Health Plan's reconsideration denied September 11, both petitions for review denied November 17, 1987 (304 Or 405)

DOCKEN,
*Appellant,*

*v.*

CIBA-GEIGY et al,
*Respondents.*

(A8505-03039; CA A39177)

739 P2d 591

Mark M. McCulloch, Portland, argued the cause for appellant. With him on the briefs were Powers, McCulloch & Bennett and David Gernant, Portland.

Susan E. Watts, Portland, argued the cause for respondent Ciba-Geigy Corporation. With her on the brief was Kennedy, King & Zimmer, Portland.

John R. Faust, Jr., Portland, argued the cause for respondents Kaiser Foundation Health Plan of Oregon, Inc., Kaiser Foundation Hospitals, Inc., Northwest Permanente, P.C., and Tim Carey, M.D. On the brief were Mildred J. Carmack and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

WARDEN, P. J.

Van Hoomissen, J., concurring.

## WARDEN, P. J.

Plaintiff, personal representative of the estate of her deceased son, brought claims of negligence and strict product liability against the prescribing physician, pharmacy and manufacturer of a drug that allegedly caused her son's death. The claims were dismissed for failure to allege ultimate facts sufficient to constitute claims for relief, and plaintiff appeals. We reverse.

We summarize the facts as stated in the first amended complaint. In November, 1979, the physician (Carey) and pharmacy (Kaiser)[1] provided a drug known as Tofranil for plaintiff's son, Tim. The drug had been manufactured and packaged by defendant Ciba-Geigy (Geigy), which had supplied it to Kaiser. In August, 1983, plaintiff's son Terry ingested several tablets of the drug, hoping that they would remedy a problem similar to that for which they had been prescribed for Tim. Terry died as a result.

As a first claim, on a strict product liability theory, plaintiff alleges that the drug which Kaiser sold and Geigy supplied was dangerous and defective, because of defendants' inadequate labeling and insufficient warnings, particularly:

"(a) In failing to label the Tofranil in a manner adequate to insure its safe use.

"(b) In failing to warn that Tofranil must be taken and administered with extreme caution and under conditions supervised by a doctor because of the potentially fatal effect of excessive dosage.

"(c) In failing to warn that Tofranil must be disposed of promptly after use because of the potentially fatal effect of excessive dosage.

"(d) In failing to warn that Tofranil must be stored out of reach or access by children because of the potentially fatal effect of the excessive dosage.

"(e) In failing to warn that Tofranil does not quickly leave a person's body, resulting in a potentially fatal build-up when taken over a short period of time.

---

[1] Defendants Kaiser Foundation Health Plan of Oregon, Inc., Kaiser Foundation Hospital, Inc., and Northwest Permanente, P.C., are referred to collectively as "Kaiser" in plaintiff's complaint.

"(f) In failing to warn that excessive dosage of Tofranil may result in death, particularly to children."

As a second claim, the complaint alleges that each defendant was negligent in the same particulars as in the strict product liability claim.

We first address plaintiff's negligence claim. The parties agreed at oral argument that the dispositive issue is "duty." Defendants frame the issue as whether a drug manufacturer, pharmacy or prescribing physician owes a duty of care to someone for whom the drug is not prescribed if injuries result from the person's taking the drug.

When they submitted their briefs and at oral argument, the parties were without the benefit of the most recent Oregon Supreme Court opinions discussing the role of "duty" or "no duty" in common law negligence cases. In *Donaca v. Curry Co.,* 303 Or 30, 32, 734 P2d 1339 (1987), the court stated:

" 'Duty' plays no affirmative part in a plaintiff's case that does not invoke an obligation arising from or defined by a status, relationship, statute, or other legal source outside negligence law itself; and, unless the plaintiff invokes such a specific legal source, 'no duty' is only a defendant's way of denying legal liability for conduct that might be found in fact to have unreasonably caused a foreseeable risk of harm to an interest of the kind for which the plaintiff claims damages."

In *Kimbler v. Stillwell,* 303 Or 23, 26, 734 P2d 1344 (1987), the court said:

"Unless a plaintiff invokes a particular legal duty arising from a status or relationship or defined by a legal source apart from the common law of negligence itself, 'no duty' is a defense argument that the plaintiff's injury falls outside the foreseeable risks of the alleged negligent conduct, phrased as a legal conclusion for the court rather than as a factual assessment of the foreseeable risks."

Also, in *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 17, 734 P2d 1326 (1987), the court said:

"In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly

depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

Plaintiff has not invoked a particular legal duty arising from a status or relationship, statute or other legal source outside negligence law itself. She relies on the common law rules of liability for foreseeable harm caused by defendants' alleged failure to take reasonable care to avoid or minimize the risk of that harm. Similarly, none of the defendants' "no duty" defenses asserts that some rule or status disqualified Terry or his personal representative, individually or as a member of a class, from recovering damages. Defendants' contentions that a person who does not have the status of a patient with a prescription for the drug cannot recover is an argument for a policy, but defendants have failed to point out any legal foundation, distinct from elements of the common law of negligence, for that policy.

■ Defendants' "no duty" defense is only another way of stating that the harm Terry suffered by using a drug prescribed for his brother was not a foreseeable risk of the conduct alleged as negligence in plaintiff's complaint. *See Kimbler v. Stillwell, supra,* 303 Or at 26. The role of the court is "to determine whether upon the facts alleged or the evidence presented no reasonable factfinder could decide one or more elements of liability for one or the other party." *Fazzolari v. Portland School Dist. No. 1J, supra,* 303 Or at 17. We cannot say as a matter of law that the harm was not foreseeable or that the complaint fails to allege facts from which a jury could find defendants negligent. The court erred in dismissing the negligence claim against defendants.

Plaintiff also contends that the court erred in dismissing the strict product liability claim. Strict product liability is defined in ORS 30.920, which provides in part:

"(1) One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b) The product is expected to and does reach the user

or consumer without substantial change in the condition in which it is sold or leased.

"(2)   The rule stated in subsection (1) of this section shall apply, even though:

"(a)   The seller or lessor has exercised all possible care in the preparation and sale or lease of the product; and

"(b)   The user, consumer or injured party has not purchased or leased the product from or entered into any contractual relations with the seller or lessor.

"(3)   It is the intent of the Legislative Assembly that the rule stated in subsections (1) and (2) of this section shall be construed in accordance with the Restatement (Second) of Torts sec. 402A, Comments a to m (1965). All references in those comments to sale, sell, selling or seller shall be construed to include lease, leases, leasing and lessor."

■■   Defendants Carey and Kaiser argue that the claim was properly dismissed, because plaintiff failed to allege that they were in the business of selling the drug and, as to Carey, failed to allege that he sold the drug. When plaintiff amended the complaint, she had an opportunity to plead those facts but did not. We agree with defendants Carey and Kaiser that, because those facts were not pleaded, plaintiff's complaint failed to state a cause of action in strict product liability against them. *See* ORS 30.920; *Lancaster v. Hartzell*, 54 Or App 886, 637 P2d 150 (1981), *rev den* 292 Or 722 (1982).

Defendant Geigy argues that *comments a-m*, of Restatement (Second) Torts, § 402A, make clear that strict product liability was not intended to cover a situation like that alleged by plaintiff. Geigy's only specific argument is that Terry was not a "user or consumer" for the purposes of ORS 30.920. That argument is based solely on the language in *comment l:*

"l.   *User or consumer.* In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he does so. He may have acquired it through one or more intermediate dealers. It is not even necessary that the consumer have purchased the product at all. He may be a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser. The liability stated is one in tort, and

does not require any contractual relation, or privity of contract, between the plaintiff and the defendant.

" 'Consumers' include not only those who in fact consume the product, but also those who prepare it for consumption; and the housewife who contracts tularemia while cooking rabbits for her husband is included within the rule stated in this Section, as is also the husband who is opening a bottle of beer for his wife to drink. *Consumption includes all ultimate uses for which the product is intended,* and the customer in a beauty shop to whose hair a permanent wave solution is applied by the shop is a consumer. 'User' includes those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles or airplanes, as well as those who are utilizing it for the purpose of doing work upon it, as in the case of an employee of the ultimate buyer who is making repairs upon the automobile which he has purchased." (Emphasis supplied.)

■     Geigy argues that a prescription drug is not "intended" for anyone other than the person for whom it is prescribed. That is true. However, simply because consumption includes *intended* uses, it does not necessarily follow that unintended uses are excluded. In adopting a statutory analog of section 402A, the Oregon legislature made a substantial modification by using the phrase "user, consumer *or injured party.*" ORS 30.920(2)(b). (Emphasis supplied.) Even before the legislature made that change, the Restatement had been read by the Supreme Court to suggest that it might apply to a broader potential class of plaintiffs. *See Cornelius v. Bay Motors,* 258 Or 564, 484 P2d 299 (1971); *Heaton v. Ford Motor Co.,* 248 Or 467, 470, 435 P2d 806 (1967) (citing *Wights v. Staff Jennings,* 241 Or 301, 405 P2d 624 (1965) for the holding that a nonprivity user of a defective product could recover for injuries caused by the product). The complaint states a strict product liability claim against Geigy.

Reversed as to all defendants on negligence claim; reversed as to defendant Ciba-Geigy and affirmed as to defendants Kaiser Foundation Health Plan of Oregon, Inc., Kaiser Foundation Hospitals, Inc., Northwest Permanente, P.C. and Carey on strict product liability claim; remanded.

**VAN HOOMISSEN, J.,** concurring.

I concur in the majority's result.

In February, 1986, when the trial judge dismissed plaintiff's complaint for failure to state claims on which relief could be granted, the judge's order was legally correct on the basis of then existing Oregon authority. Thereafter, in *Fazzolari v. Portland School Dist. No. 1J,* 303 Or 1, 734 P2d 1326 (1987), *Kimbler v. Stillwell,* 303 Or 23, 734 P2d 1344 (1987), and *Donaca v. Curry Co.,* 303 Or 30, 734 P2d 1339 (1987), the Supreme court moved the goal posts. As I read those cases, dismissal of a negligence complaint under ORCP 21A for failure to state ultimate facts sufficient to constitute a claim should almost never be allowed except, of course, "in an extreme case," whatever that means. *See Donaca v. Curry Co., supra,* 303 Or at 38.