Argued and submitted November 5, reversed and remanded December 26, 1990, reconsideration denied February 27, petition for review denied April 2, 1991 (311 Or 261)

Marion Adeline REED,
*Appellant,*

*v.*

JACKSON COUNTY,
*Respondent.*

(89-0651-L-2; CA A63039)

803 P2d 1194

Kelly L. Andersen, Central Point, argued the cause for appellant. With him on the briefs was Richardson & Andersen, P.C., Central Point.

L. Lee Ferguson, Medford, argued the cause for respondent. With her on the brief was Cowling and Heysell, Medford.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff appeals from the summary judgment for defendant county in this personal injury action. We reverse.

Plaintiff was injured while on her way to the county fair. She parked her car at a shopping center, where she caught a shuttle that was to take passengers to the fairgrounds. Because traffic was backed up on Penninger Road, which is owned by the county and serves as an access road to the fairgrounds, the shuttle driver allowed passengers who so chose to disembark and walk approximately one-quarter mile on Penninger Road to the fairgrounds. Plaintiff cut her foot on a bent and jagged reflector post during her walk on the road. She brought this action, alleging, *inter alia,* that the county was negligent in failing to warn invitees of the dangerous condition and that it knew or in the exercise of reasonable care should have known about the condition.

The trial court allowed the county's summary judgment motion. It concluded that plaintiff was a licensee rather than an invitee, that the county's only duty to her was to warn of known concealed defects and that there was nothing in the evidence submitted by the parties to show that the county was aware of the defective reflector post.

Plaintiff contends, first, that the trial court erred by concluding that she was a licensee. She argues that she was walking on a county road on her way to the county fair and that she was therefore the county's invitee. In *Baker v. Lane County,* 28 Or App 53, 558 P2d 1247 (1977), the most analogous case on which plaintiff relies, we held that a boy who was injured after wandering to a part of the county fairgrounds other than the one used for the supervised activity in which he was participating was nevertheless an invitee rather than a trespasser. We held that he came within the second of two tests used to determine whether a person is an invitee:

"The first test, known as the economic-benefit theory, accords invitee status upon one who enters premises upon business which concerns the occupier, with the occupier's express or implied assent. *Rich v. Tite-Knot Pine Mill,* [245 Or 185, 421 P2d 370 (1966)]. The second test, known as the invitation test, would term a person an invitee

" '* * * if the occupier, expressly or impliedly, has led such person to believe that the premises were intended to be

used by visitors for the purpose which plaintiff is pursuing and that such use was not only acquiesced in by the occupier but was in accordance with the intention or design with which the place was adapted and prepared * * *.' *Parker v. Hult Lumber & Plywood Co.*, 260 Or 1, 8, 488 P2d 454 (1971).

*See also* W. Prosser, Law of Torts § 61 (4th ed 1971); James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees,* 63 Yale L J 605 (1954). Proceeding under the invitation theory, there have been a number of cases, both in Oregon and in other jurisdictions, which hold that when a public body maintains and occupies land or facilities which are open to the public, then all members of the public who use the land or facility for the purposes for which they are held open have invitee status." 28 Or App at 57-58. (Footnotes omitted.)

Plaintiff argues that she meets both of the tests: Her use of the access road to attend the fair brought her within the economic benefit test, and it also qualifies under the invitation test. The county responds:

"The county would receive an economic benefit upon plaintiff's admission to the fairgrounds[;] however, the county received no economic benefit in plaintiff's decision to walk by the side of the road rather than to remain on the bus until it reached its designated stop [at the gate]. At the time of her injury, plaintiff was not on fairground property. The economic benefit test set out in *Baker* is inapplicable.

"The second test is the invitation test. * * * Here the premises must be construed as the roadway not the fairgrounds. Plaintiff does not meet this test. There is no evidence that the defendant acquiesced in plaintiff's use of the premises in such a manner and there is further no evidence that this use by plaintiff was in accordance with the intention or design with which the place was adapted and prepared. All of the evidence shows that the access road was meant for vehicles, not for pedestrian traffic."

The county makes too fine a distinction. It does not dispute that the road was intended to and did serve as an access to the fairgrounds. There was evidence that other people were walking on the road at the same time and to the same destination and that other persons got off the shuttle and walked at the same time that plaintiff did. More fundamentally, the county's showing was not sufficient to establish

conclusively that the road was "intended or designed" *exclusively* for vehicular use; and, even if that fact had been established, it might be relevant to the invitation test but would not be relevant to whether plaintiff's use of the access road to reach the fairgrounds made her an invitee under the economic benefit test.

The benefit that the county would reap at the fairgrounds gate was dependent on many of its customers using the road that it provided to reach the gate, whether they traveled by vehicle or on foot. If walking on the road was a dangerous or inappropriate activity, that fact might tend to support a contributory negligence defense, and it might also have some bearing on the particulars of the county's duty to inspect and to correct or warn. *See Woolston v. Wells,* 297 Or 548, 687 P2d 144 (1984); *Nylander v. State of Oregon,* 292 Or 254, 637 P2d 1286 (1981). However, it does not defeat plaintiff's status as an invitee to whom the duty is owed. Under the evidence, the fairgrounds and the access road are inseparable, at least for purposes of the economic benefit test.[1]

The county contends that, even if plaintiff was an invitee, she did not present sufficient evidence in the summary judgment proceeding to refute its showing that she could not prove that it had breached a duty. Specifically, according to the county, it showed through plaintiff's deposition that neither she nor anyone of whom she was aware knew when the reflector post had become bent and dangerous. Although the county produced no evidence that the dangerous condition had *not* existed for a long enough time to be reasonably discoverable, it maintains that it was entitled to summary judgment because it showed that plaintiff could not prove that the county knew or, in the exercise of reasonable care, should have known of the condition and therefore have been able to correct or warn fairgoers about it. *See Woolston v. Wells, supra; Rich v. Tite-Knot Pine Mill,* 245 Or 185, 192, 421 P2d 370 (1966).

Plaintiff makes two related responses to the county's

---

[1] In her reply brief, plaintiff notes that the shuttle was owned by the county and the driver was a county employee. Plaintiff makes no specific citations to the record for those facts, and our reading of the record does not reveal any evidence for them.

We note that both parties' arguments accept as viable law the traditional formulation that a landowner's duties to invitees, licensees and trespassers descend in scale. *See Van Den Bron v. Fred Meyer, Inc.,* 86 Or App 329, 331, n 1, 738 P2d 1011 (1987).

argument: First, she contends, there was evidence that the county failed to inspect the area for a period of several days during which heavy fair traffic was anticipated, and it was inferable that the reflector post became bent during that period. Her second argument is that, to resist summary judgment, she did not have to show when the reflector post was damaged, even if she might ultimately be required to prove that fact at trial, and the county was not entitled to summary judgment, because it "has not carried its burden of affirmatively proving that [it] was not negligent."

Both parties rely on *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978). In that strict products liability action, arising out of an automobile fire, the court held that the defendant vehicle manufacturer and seller were entitled to summary judgment. The defendants presented evidence that the plaintiff purchaser had inserted a stronger light fuse than the one originally supplied. The defendants also introduced the owner's manual, which contained a warning against the use of fuses exceeding a specified amperage. The plaintiff presented no evidence. The court held that the defendants' evidence was sufficient for summary judgment, in the absence of any controverting evidence by the plaintiff and notwithstanding the defendants' inability to establish whether the amperage of the new fuse was greater than the limit in the owner's manual. The court concluded that the defendants' evidence demonstrated that the plaintiff could not prove as a probability that the fire was caused by a defect in the product as it was originally sold.

Plaintiff relies on the introductory statement to the court's analysis in *Seeborg:*

"The moving party has the burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. The record on summary judgment is viewed in the light most favorable to the party opposing the motion. * * * *This is true even as to those issues upon which the opposing party would have the trial burden.*" 284 Or at 699. (Emphasis supplied; citations omitted.)

The county relies on the more extensive discussion in *Seeborg:*

"Plaintiff mistakes the burden which defendants have in

establishing their right to summary judgment. Defendants do not have to establish that the stronger fuse alone was the cause of the fire; what they do have to establish is that because of the installation of the stronger fuse plaintiff cannot carry his burden to show that there was no change in the vehicle which was essential to its destruction by fire and, thus, that it was dangerously defective at the time of its purchase. The two are not the same. All defendants have to show is that the admitted factual posture of the case is such that plaintiff would not be entitled to a jury determination. They have to show that the facts are insufficient to establish that the defective condition of the vehicle which caused its destruction was dangerous at the time it was sold.

"The factual posture in this case presents a vehicle which burns after it has suffered numerous short circuits and a stronger fuse has been installed. We assume it is general knowledge that a common cause of fire is a short circuit in wiring and that this is the reason why fuses or other forms of circuit breakers are installed in vehicles, houses, and almost every place where electrical wiring is used. Had there been no change in the vehicle the jury could infer that there was an unidentified defect in it at the time it was sold which caused it to burn, presuming that plaintiff would negative leaving in it a lighted cigarette or other form of fire extraneous to the vehicle itself. However, we do not have such a situation here, and no such inference can be drawn since plaintiff changed a safety feature, the purpose of which was to prevent short circuits from causing fire, in a vehicle having a record of short circuits.

"Plaintiff points out that we do not know whether or not the stronger fuse inserted by him after purchase was of a higher amperage rating than that specified by the manual. This is true. Nor, on the other hand, do we know that it was not. If it was established that the fuse was of a greater amperage rating than that specified by the manual, it would be clear (given the record of short circuits and the absence of any other explanation) that the change in the fuse was most probably an essential cause of the fire. In the present state of the proof it is just as likely that the change was to a greater amperage than that specified, than that it was not, and that the change was an essential cause of the fire. There is nothing to which one can point from which a jury would be able to make a decision one way or the other. Because of the provisions of [former] ORS 18.105(4) plaintiff may not wait until trial if he has evidence favorable to his position on this subject. Instead, he must produce it at the hearing for summary judgment. The present state of the record does not entitle him

to go to the jury when, in order to carry his burden, he must prove that it is more likely than not that the vehicle's destruction was caused by a dangerously defective condition existing at the time of its purchase." 284 Or at 701-02. (Footnote omitted.)

The county also relies on *Dubry v. Safeway Stores,* 70 Or App 183, 689 P2d 319 (1984), *rev den* 298 Or 470 (1985), where we held that the plaintiff, who was injured after slipping on "foreign material" on the floor in the defendant's store, had not successfully resisted the defendant's motion for summary judgment. The defendant relied on the plaintiff's deposition, in which he described the material on which he slipped. We analyzed the plaintiff's testimony and concluded:

> "Plaintiff concedes that there is no evidence that defendant's employes caused the material to be on the floor or that defendant or its employes actually knew that it was on the floor. The parties agree that the relevant inquiry is whether there is evidence that the material was on the floor for such a length of time that defendant could have, by the exercise of reasonable diligence, discovered and removed it.
>
> "* * * * *
>
> "At best, there is an equal probability that the leaves were on the floor for two seconds or for two hours. There is no basis for a reasonable factfinder to conclude the leaves were on the floor for a sufficient period of time that defendant, in the exercise of reasonable diligence should have discovered and removed them." 70 Or App at 188-89.

The county argues that, under *Seeborg* and *Dubry,* it need not produce any affirmative evidence to negate negligence if, as it contends that it did, it can establish that plaintiff was unable to prove an essential fact at the time of the summary judgment proceeding. However, unlike the county here, the defendants in *Seeborg* offered more than evidence about what the *plaintiff* could prove. The owner's manual and the evidence of the fuse change created a permissible inference that was inconsistent with the plaintiff's theory of liability, and the plaintiff produced no evidence to controvert it. We do not agree with the county's understanding that *Seeborg* establishes a general rule that a defendant may obtain a summary judgment merely by showing the plaintiff's current lack of proof of an essential fact that it might ultimately have to prove at trial, if the defendant produces no evidence tending to

prove the nonexistence of the fact. Were the county's understanding of *Seeborg* correct, it would have been meaningless for the court to have assigned any burden to the moving party "as to those issues upon which the opposing party would have the trial burden." The county appears to argue that that language in *Seeborg* relates only to how the summary judgment record is viewed on appeal, rather than to evidence about particular issues. However, that is a distinction without a difference: The record is reviewed favorably to the opposing party for the purpose of determining whether there is conclusive evidence against it on all material factual issues.

The evidence in *Dubry* was similar to the evidence here, but the factual questions are so dissimilar that *Dubry* does not assist the county. The defendants in both cases asserted that there was no basis for a finding that they should have been aware of the dangerous condition, because the plaintiffs' depositions showed that they could not provide any information about how long the dangerous condition had persisted. Our holding that that showing was sufficient for summary judgment in *Dubry* was largely compelled by the Supreme Court decisions that we discussed that related uniquely to similar slip-and-fall cases. Where the question is how long hazardous refuse has been on a grocery store floor, the injured person or witnesses to the injury are the only likely observers of conditions at the time of the injury and, hence, of moisture and other changing characteristics that might disclose how long the refuse had been on the floor. If favorable evidence of that kind is unavailable to a slip and fall victim within a short time after the accident, it almost certainly never will be. The same is not true in this case, where the reflector post was located on a well-traveled road that the county had not inspected for several days before plaintiff's injury. *Dubry* states an exceptional rule, applicable only to cases with similar facts. In the usual case, such as this one, a defendant is not entitled to summary judgment on a bare showing that the plaintiff cannot prove negligence through the testimony of the particular witness or witnesses whom the defendant happens to have deposed.

Reversed and remanded.