Argued and submitted May 22, 1992, reversed and remanded October 20, 1993, reconsideration denied March 16, petition for review denied May 24, 1994

(319 Or _____)

Tony ZAVALAS,
as Personal Representative of the Estates of
Carlos Alexander Rojano Perez, Deceased,
and Marco Antonio Zavalas Rojano, Deceased,
*Appellant,*

*v.*

STATE OF OREGON,
by and through its
DEPARTMENT OF CORRECTIONS,
*Defendant,*

*and*

Roger G. SMITH, M.D.,
an Oregon licensed physician,
*Respondent.*

(C891140CV; CA A66267 (Control))

Benjamin J. OLIVARES,
as Guardian ad litem for John L. Olivares
and Benjamin Olivares, Jr.,
and Benjamin J. Olivares, individually,
*Appellant,*

*and*

Maria Cruz JIMENEZ,
individually,
*Plaintiff,*

*v.*

STATE OF OREGON,
by and through its
DEPARTMENT OF CORRECTIONS,
*Defendant,*

*and*

Roger G. SMITH, M.D.,
an Oregon licensed physician,
*Respondent.*

(C891141CV; CA A66268)
(Cases Consolidated)

861 P2d 1026

Kurt L. Maul argued the cause for appellant Tony Zavalas. Paul Bovarnick argued the cause for appellant Benjamin J. Olivares. With them on the briefs was Hampson, Bayless, Murphy & Stiner.

Lindsey H. Hughes argued the cause for respondent. With her on the brief was Hallmark, Keating & Abbott, P.C.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

LEESON, J.

De Muniz, J., dissenting.

---

* Leeson, J., *vice* Buttler, J., retired.

**LEESON, J.**

In these consolidated cases, plaintiffs appeal a summary judgment dismissing their negligence and wrongful death actions against physician Roger Smith (defendant). On review of a summary judgment, we determine whether the moving party is entitled to judgment as a matter of law. We view any evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993). We reverse.

Plaintiff Zavalas is the personal representative of two children who died when Donna Shonkwiler struck them with her automobile. Plaintiff Olivares is the guardian *ad litem* of two other children injured in the same incident. Individual plaintiffs Benjamin J. Olivares and Maria Cruz Jimenez are the parents of the injured children. Defendant treated Shonkwiler prior to the accident.

On June 14, 1988, Shonkwiler, who was on probation for a 1985 conviction for possession of heroin, had an appointment with defendant at his office. Shonkwiler made the appointment because a neighbor had told her that defendant was "easy" about prescribing the psychoactive drug Xanax. About an hour before the appointment, Shonkwiler injected herself with heroin. During the appointment she "cried and cried and cried." She described her symptoms and depression. She also told defendant that in the past she had taken a number of prescription drugs, including lithium, Limbitrol, Mellaril, Valium and Xanax.

Defendant met with Shonkwiler for approximately 45 minutes. He estimated that about 20 minutes into their meeting she began to cry, and recounted that it was difficult to get answers from her. Defendant did not conduct a physical examination of Shonkwiler, so did not notice needle marks on her arms from injecting drugs. Neither did he obtain a complete history, because "to obtain history and do a proper examination would have taken the rest of the morning, and I didn't have the rest of the morning."[1] At the end of their

---

[1] ORS 677.190(25) provides that the Board of Medical Examiners may suspend or revoke a license to practice medicine in Oregon for "prescribing controlled

meeting, defendant gave Shonkwiler a prescription for 100 tablets of Xanax to help control her anxiety. He prescribed that quantity because Shonkwiler told him that she had difficulty with transportation and because the drug was less expensive when purchased in quantity.

Three days later, Shonkwiler called defendant's office and the Beaverton Police Department and reported that her purse and Xanax prescription had been stolen. The police department confirmed the report and offered to pay for a refill from its reserve fund. Defendant authorized a drug store to dispense a refill.

On the evening of June 19, 1988, Shonkwiler attempted suicide by an overdose of Xanax and heroin. The next day, with Xanax, heroin, cocaine and marijuana in her system, she drove her car and struck the children.

Plaintiffs executed a covenant not to sue Shonkwiler and filed these claims against defendant. In their amended complaint, plaintiffs alleged that he was negligent in prescribing Xanax to Shonkwiler when she presented symptoms of "psychotic illness, depression, chronic bipolar mental disorder and chronic drug use," and in authorizing the refill of that prescription. They alleged that, as a foreseeable result of defendant's negligence, Shonkwiler drove her car while under the influence of Xanax, and that Xanax was a substantial factor in impairing her ability to drive safely.

Defendant did not answer. Instead, he filed various motions under ORCP 21, including a motion to dismiss for failure to state a claim. ORCP 21A(8). That motion was denied. Defendant then moved for summary judgment. He argued that, regardless of whether his conduct unreasonably created a foreseeable risk of the type of harm suffered, as a physician he owes no duty to nonpatients. The trial court granted that motion.[2]

---

substances * * * without following accepted procedures for examination of patients * * *."

[2] Defendant's motion for summary judgment presented purely legal issues. The dissent contends, nonetheless, that the trial court granted summary judgment on the ground that plaintiffs' injuries were unforeseeable. Because the language used by the trial court is ambiguous, we think it more reasonable to conclude that the motion was granted on the ground upon which it was argued. We treat the judgment as such.

Determining whether summary judgment was appropriate requires us to examine the role of "duty" and "no duty" in negligence cases involving a defendant physician and plaintiffs who are not patients of that physician. The Supreme Court in *Fazzolari v. Portland School District No. 1J*, 303 Or 1, 734 P2d 1326 (1987), held that unless a status, relationship or particular standard of conduct creates, defines or limits a defendant's responsibility, the issue of liability for harm resulting from a defendant's conduct properly depends on whether the conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell a plaintiff. The court concluded that "[d]uty remains a formal element of the plaintiff's claim only in the sense that the plaintiff loses if the defendant persuades a court to phrase such a limit in terms of 'no duty.' " 303 Or at 10.

The court elaborated on the "no duty" defense in *Donaca v. Curry Co.*, 303 Or 30, 734 P2d 1339 (1987). It characterized "no duty" defenses as being of two kinds:

"Sometimes 'no duty' excludes whole categories of claimants or of claims, for instance economic or psychic loss caused by physical injury to another person. At other times 'no duty' refers narrowly to an aspect of the particular circumstances before the court. This often amounts to a claim that no rational factfinder could find defendant's conduct unreasonably to pose a foreseeable risk to the plaintiff but does not really assert any categorical rule." 303 Or at 32-33. (Footnote omitted.)

The "no duty" defense asserted by defendant is of the first kind. According to him, an entire category of claimants — nonpatients — is prohibited from recovering against a physician for alleged acts of negligence in treating a patient. He asks us to hold, as a matter of law, that a physician has no duty to third parties and, therefore, that a physician is shielded from liability to third parties who claim that the physician's negligent treatment of a patient was the foreseeable cause of their harm.

---

Moreover, if the trial court had granted summary judgment on the basis of the unforeseeability of plaintiffs' injuries, that would have been error. Because defendant did not contest the foreseeability of plaintiffs' injuries, plaintiffs were not required to present proof on that issue in order to withstand the motion. *Reed v. Jackson County*, 105 Or App 24, 31-32, 803 P2d 1194 (1990), *rev den* 311 Or 261 (1991).

Defendant makes three arguments in support of his theory that a physician can never be liable to nonpatients. The first is that physicians are shielded from liability to third persons by the standard of care they owe to their patients. That standard is articulated in ORS 677.095, which provides:

"A physician * * * licensed to practice medicine * * * has the duty to use that degree of care, skill and diligence which is used by ordinarily careful physicians * * * in the same or similar circumstances in the community of the physician * * * or a similar community."

In construing a statute, our responsibility is "simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. We generally apply clear, unambiguous statutes according to their plain meaning, without resort to extrinsic evidence of legislative intent, unless literal application would produce an absurd or unreasonable result. *Satterfield v. Satterfield*, 292 Or 780, 643 P2d 336 (1982).

ORS 677.095 declares the duty of care that licensed physicians must satisfy when engaged in the practice of medicine in Oregon. It holds physicians to the degree of care, skill and diligence of ordinarily careful physicians in the community of the physician or a similar community. The language of the statute states the nature of the physician's duty of care. It is notably silent about the extent or reach of that duty. Defendant would have us read into the statute language that is conspicuously absent regarding the extent of the physician's duty. We are not at liberty to do so. ORS 174.010. Defendant's reliance on ORS 677.095 in support of his defense of "no duty" is misplaced.

Defendant next argues that, "in the absence of a physician-patient relationship, plaintiffs simply have no claim for medical negligence against [defendant]."[3] Defendant cites only one authority for that position, *Webb v. Jarvis*, 575 NE2d 992 (Ind 1991). Defendant is correct that the Indiana court held that a physician who had prescribed

---

[3] Defendant acknowledges one exception to that argument; namely, the physician's duty to warn. *See Docken v. Ciba-Geigy*, 86 Or App 277, 739 P2d 591, *rev den* 304 Or 405 (1987). Defendant emphasizes that "[t]his case, however, is not a failure to warn case."

anabolic steroids for a patient who subsequently became violent and injured a third party was not liable to the third party under the facts of that case. However, the court explicitly rejected the position that defendant would have us adopt. It said, "[W]e agree with [plaintiff] that the lack of privity between him and [defendant physician], alone, does not mandate the conclusion that there was no duty." 575 NE2d at 996. It concluded that, although physicians generally do not owe a duty to unknown nonpatients who may be injured by the physician's treatment of a patient, "[t]his conclusion should not be interpreted as inoculating physicians so as to give them complete immunity against third person claims." Justice Dickson concurred, saying:

> "I concur separately to reflect my understanding that by our opinion today this Court does not intend to unequivocally declare that physicians generally have no duty toward unknown third persons foreseeably at risk of injury resulting from the negligent administration or prescription of medication." 575 NE2d at 998.

Like the court in *Webb* and courts in several other jurisdictions, we reject defendant's position that under no circumstances can a physician ever be liable to a nonpatient third party. *See, e.g., Watkins v. United States*, 589 F2d 214 (5th Cir 1979); *Welke v. Kuzilla*, 144 Mich App 245, 375 NW2d 403 (1985); *Wharton Transport Corp. v. Bridges*, 606 SW2d 521 (Tenn 1980). Defendant offers no basis for holding that, under the particular circumstances of this case, he should prevail on his "no duty" defense.

Finally, defendant contends that our decision in *Doe v. Portland Health Centers, Inc.*, 99 Or App 423, 782 P2d 446 (1989), *rev dismissed* 310 Or 476 (1990), "is dispositive" of plaintiffs' claims. In *Doe*, the defendant disclosed to a third person that the plaintiff's daughter had been hospitalized after a suicide attempt. The plaintiff, a practicing psychologist, claimed that she suffered business losses, loss of reputation and emotional distress because of the disclosures. She maintained that the duty of confidentiality owed to her daughter extended to her. We affirmed the trial court's grant of the motion to dismiss the plaintiff's claim, and held that, under the facts of that case, the defendant's statutory duty of

confidentiality, ORS 677.190(5), did not extend beyond the patient with respect to the disclosure.

We disagree with defendant that the holding in *Doe* can be generalized to support his theory that under no circumstances can a physician be held liable to third parties for the negligent treatment of a patient.[4] In *Doe*, we declined the invitation "to attempt to define the scope of the duty [of confidentiality] under all circumstances[.]" 99 Or App at 426.

Defendant's contention that as a physician he is shielded from plaintiffs' allegations in this case by the defense of "no duty" fails for the reasons explained above. Defendant was not entitled to summary judgment.[5] Because this appeal from summary judgment is before us only on defendant's "no duty" theory, we do not address whether plaintiffs' allegations are sufficient to support the claim that defendant's negligence was the foreseeable cause of their harm.[6]

Reversed and remanded.

**De MUNIZ, J.,** dissenting.

I do not agree with the majority's reading of the trial court's statement on summary judgment, its characterization of the issues on appeal or its relegating to a footnote the recent controlling Supreme Court opinion in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993). I dissent.

---

[4] *Cf. Docken v. Ciba-Geigy, supra*, where we held that a physician's liability for negligently failing to warn of the dangers of a prescription drug extends to anyone foreseeably injured by that negligence. In that case, the defendant's claim of "no duty" was not based on any statute, status or rule. We characterized the "no duty" defense as merely another way of stating that the harm suffered by a boy who used a drug prescribed for his brother was not a foreseeable risk of the conduct alleged as negligence in the plaintiff's complaint.

[5] The dissent would conclude that defendant was entitled to summary judgment due to the insufficiency of the plaintiffs' allegations of foreseeability. However, on appeal from a summary judgment, we do not review the sufficiency of the pleadings. We review to determine whether there is any genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Park v. Hoffard*, 315 Or 624, 627, 847 P2d 852 (1993).

[6] Nothing in *Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993), affects our decision in this case. The dissent is correct that, at the trial court level, *Buchler* was resolved by summary judgment, as was this case. It does not contend that the comparison goes any further. We agree.

Defendant brought his motion for summary judgment on the ground that he owed a duty only to his patients. Plaintiffs' countering argument was that allegations that defendant negligently prescribed Xanax to Shonkwiler are sufficient to present a question for the jury under the foreseeability analysis of *Fazzolari v. Portland School District No. 1J*, 303 Or 1, 734 P2d 1326 (1987). The trial court granted summary judgment for defendant. However, I do not agree with the majority that, in reaching that conclusion, "the language used by the trial court is ambiguous," 124 Or App at 170 n 2, or with the majority's persistence in analyzing only the issue of whether a doctor ever owes a duty to persons other than the patient.

The trial court applied the foreseeability standard of whether defendant's conduct, which resulted in harm to plaintiffs, was unreasonable under the circumstances and the risk of harm to the class of persons to whom plaintiffs belong was foreseeable. *Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 437, 760 P2d 874 (1988); *Donaca v. Curry Co.*, 303 Or 30, 734 P2d 1339 (1987); *Fazzolari v. Portland School Dist. No. 1J, supra.* Under that standard, it concluded that plaintiffs here did not come within the protected class of persons. It stated:

> "If you read the opinion in the *Fazzolari* case and then in the *Donaca* case, the key language to me is whether the conduct that plaintiff complains about of the doctor unreasonably caused a foreseeable risk of harm to an interest of the kind for which the plaintiff claims damages, and to me that means the protected group for which the plaintiff claims damages, and the difficulty I'm having with this case is the link that the plaintiff is making from Shonkwiler going out and using more of the pills than she should have or perhaps just using the pills if she was using them in combination with other pills and getting in a vehicle and injuring someone with the vehicle. That's the difficult part (unintelligible) and I'm not prepared to say that this theory [from *Fazzolari* and *Donaca*] reaches that far. I'm satisfied that although the result here was tragic, that the remedy is not in a negligence action against the doctor, because if you follow that theory to its logical conclusion, then a doctor has to protect against that next step from every patient, that being the patient misusing the pills or using them and then going to work or getting in a car or whatever else that might cause some risk of

harm to someone else and I'm not satisfied that these cases have expanded negligence law in this state to that degree and I'm going to grant the motion for summary judgment."

The majority glosses over the fact that this is *plaintiffs'* appeal. Plaintiffs continue to argue that the correct analysis to determine defendant's liability is foreseeability, but they do not explain why the court's foreseeability analysis was erroneous. Neither does the majority, stating only conclusorily that, "if the trial court had granted summary judgment on the basis of the unforeseeability of plaintiffs' injuries, that would have been error." 124 Or App at 170 n 2.[1] The majority also ignores its own admonition that our role, "[o]n review of a summary judgment, [is to] determine whether the moving party is entitled to judgment as a matter of law." 124 Or App at 169. As a matter of law, the trial court was correct under the Supreme Court's opinions on foreseeability before *Buchler* and even more correct under *Buchler*.[2]

In *Buchler*, the plaintiff's decedent had been killed by a prisoner who had escaped from a work crew of a forest work camp. The prisoner had driven away in the state's van, in which the keys had been left in the ignition, and had later stolen a gun with which he shot the decedent. The Supreme Court held that the Corrections Division could not be liable for the actions of the prisoner.[3] *Buchler* controls here and demonstrates that this case should be affirmed.

This case is before us in the same procedural posture as *Buchler* was before the Supreme Court: The defendant had

---

[1] The majority does not address defendant's claim that the judgment should be sustained "even under the *Fazzolari* foreseeability analysis," because he had no duty to prevent Shonkwiler from driving.

[2] I could not disagree more with the majority's statement that "[n]othing in *Buchler* * * * affects our decision in this case." 124 Or App at 174 n 6. I cannot understand how the Supreme Court's most recent analysis of the concepts of "duty" and "foreseeability" can possibly *not* affect our analysis here. *See Buchler v. Oregon Corrections Div., supra*, 316 Or at 509.

[3] In its analysis, the Supreme Court notes the general rule of non-liability for the conduct of others in the absence of a special relationship between the defendant and the plaintiff. *Restatement (Second) Torts* § 315 (1965). In *Buchler*, a jailer had custody of a prisoner, and the court adopted section 319 as the law of Oregon. That section delineates the custodian's duty to control the conduct of others. However, the court did not preclude liability on the basis of the common-law rule in section 315. Rather, it proceeded to analyze two claims of "general negligence" under the foreseeability/facilitator analysis discussed below.

been granted summary judgment.[4] The court affirmed that judgment by looking to the allegations of the complaint and the evidence established on the motion for summary judgment.[5] We should do the same.

Here, *after* evidence was presented and summary judgment granted, plaintiffs filed amended complaints *nunc pro tunc.* They rely on those amended complaints. The complaints allege that defendant was negligent in giving Shonkwiler a prescription for 100 tablets of Xanax on June 14, 1988, and in authorizing the drug store to dispense 100 tablets of Xanax to Shonkwiler on June 17, 1988. Plaintiffs' position is that those allegations are sufficient to create a question for the jury. The majority, by focusing only on the issue of a physician's "duty" to nonpatients, apparently agrees. I do not.

In support of their position that a defendant's liability for the acts of a third party is a question for the jury, plaintiffs cite *Kimbler v. Stillwell*, 303 Or 23, 27, 734 P2d 1344 (1987):

> "The fact that a plaintiff's injury was inflicted by the intentional, even criminal, act of a third person does not foreclose liability if such an act was a foreseeable risk facilitated by the defendant's alleged negligence."

In *Buchler*, the Supreme Court expressly held that *"Kimbler* should not be considered as precedent in the future." 316 Or at 513. Its analysis in reaching that conclusion applies here.

The Supreme Court characterized the above language from *Kimbler* as the " 'facilitation rationale' " and described the limitations of its application:

---

[4] I am perplexed by the majority's statement that "[t]he dissent is correct that, at the trial court level, *Buchler* was resolved by summary judgment, as was this case. It does not contend that the comparison goes any further. We agree." 124 Or App at 174 n 6. I do not know how to make it clearer that I do not find anything in the way this case was presented to the trial court, decided there, or argued on appeal that precludes our addressing plaintiffs' arguments regarding foreseeability. In short, I contend that the comparison between this case and *Buchler* goes so far as for the latter to be controlling.

[5] The majority asserts that, on summary judgment, we "do not review the sufficiency of the pleadings." 124 Or App at 174 n 5. However, that is what the Supreme Court did in resolving *Buchler*. It assessed the "claimed facts" and the "evidence." *See Buchler v. Oregon Corrections Div., supra,* 316 Or at 513.

"[W]e think the breadth of *Kimbler's* holding cannot be supported by a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him. Certainly it cannot be supported by such analysis on a motion for summary judgment, where there are no claimed facts showing defendant's knowledge of unreasonable risk of danger to the particular plaintiffs involved. In the instant case, there also is no evidence to show any such knowledge by defendant.

"We decline to apply the 'facilitation' rationale of *Kimbler v. Stillwell, supra,* to this case. An intervening criminal instrumentality caused the harm and created the risk in that case, as in the present case. While it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity. In other words, in our society it is foreseeable that crimes may occur and that the criminals perpetrating them may cause harm. Thus, in a general sense, it is foreseeable that anyone whose conduct may in any way facilitate the criminal in committing the crime has played some part in the resulting harm. But mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it." *Buchler v. Oregon Corrections Div., supra,* 316 Or at 511. (Footnote omitted; emphasis in original.)

Any decision to prescribe medication carries a risk that the patient will abuse or misuse the medication, resulting in injurious consequences. Here, before defendant is to be held liable for the consequences of Shonkwiler's intervening act of driving under the influence of intoxicants, plaintiffs must allege facts to show the link between the prescribing of the medication and the foreseeable consequence. *See Buchler v. Oregon Corrections Div., supra,* 316 Or at 513. Plaintiffs alleged that, when Shonkwiler saw defendant, she exhibited symptoms that included psychotic illness, depression, chronic bipolar mental disorder and chronic drug use. However, there is no allegation in plaintiff's amended complaint that a prescription for Xanax was medically incorrect for a person displaying those symptoms. There is no allegation that defendant knew, or should have known, that Shonkwiler would

abuse Xanax and drive or would abuse Xanax along with other drugs and drive. There is no allegation that defendant failed to warn Shonkwiler not to drive or failed to instruct her as to the correct use of Xanax.[6] Here, as in *Buchler*, there are no claimed facts that show that defendant had knowledge of an unreasonable risk of danger to the particular plaintiffs involved and no evidence that he had such knowledge. The trial court was correct, as a matter of law. I would affirm.

---

[6] Plaintiffs' original complaint made many of those allegations. However, plaintiffs did not replead those allegations, and they stress that this is not a failure to warn case.