722 April 10, 2024 No. 213

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Jerry C. STONE,
Personal Representative for the Estate of
Marika Jeanne Stone, an Oregon Resident,
*Plaintiff-Appellant,*

*v.*

Shante Lynn WITT et al.,
*Defendants,*

*and*

Nancy L. BRENNAN, DO;
St. Charles Health Systems, Inc.,
dba St. Charles Family Care, an Oregon corporation;
High Desert Personal Medicine, LLC,
an Oregon limited liability company;
Kevin Rueter, MD; MosaicMedical,
an Oregon Corporation; and Walgreen Co.,
a Foreign Corporation,
*Defendants-Respondents.*

Deschutes County Circuit Court
18CV14401; A176439

Jack L. Landau, Senior Judge.

Argued and submitted May 22, 2023.

Kathryn H. Clark argued the cause and filed the briefs for appellant.

Hillary A. Taylor argued the cause and filed the brief for respondents St. Charles Health Systems, Inc., dba St. Charles Family Care and Nancy L. Brennan, D.O.

Ruth A. Casby argued the cause for respondents MosaicMedical and Walgreen Co. Also on the briefs were Janet M. Schroer and Hart Wagner LLP.

Travis A. Merritt, Thomas F. Armosino Jr., and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C., filed the brief for respondents High Desert Personal Medicine, LLC, and Kevin Rueter, M.D.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

While riding her bicycle, Dr. Marika Stone was struck and killed by a vehicle driven by Shantel Witt. Plaintiff, the personal representative of Stone's estate, appeals the dismissal of his negligence claims against Dr. Nancy Brennan and her employer St. Charles Health System, Inc.; Dr. Kevin Rueter and his employer High Desert Personal Medicine, LLC; MosaicMedical; and Walgreen Co. (collectively, "defendants").[1] Defendants are medical providers and a pharmacy that, according to plaintiff, negligently treated Witt before she hit Stone. In the operative complaint, plaintiff alleges that defendants violated their statutory standards of care by prescribing and dispensing large amounts of addictive drugs to Witt, and by not taking steps to prevent Witt from misusing those drugs, despite knowing or having reason to know that Witt was abusing drugs. Plaintiff further alleges that, as a foreseeable result of defendants' conduct, Witt drove a vehicle while under the influence of those drugs and struck and killed Stone. The trial court dismissed plaintiff's claims against defendants for failure to state a claim, reasoning that, because Stone was not defendants' patient, they were under no obligation to avoid creating a foreseeable risk of physical injury to her.

On appeal of the resulting limited judgments, plaintiff challenges the dismissal of his claims. He argues that defendants' status as medical or pharmaceutical providers does not insulate them from the general obligation to avoid creating foreseeable risks of physical harm to others. As explained below, under these circumstances—where plaintiff alleges that defendants breached their statutory standards of care in treating their patient, and thereby not only created a risk of harm to the patient but also unreasonably created a foreseeable risk of physical injury to a third party—we agree. Accordingly, we reverse and remand.

---

[1] We use "defendants" in this opinion to refer only to the defendants who appear on appeal. Plaintiff's claims against Witt are not at issue in this appeal, nor are plaintiff's claims against other defendants that were dismissed on statute-of-limitations grounds.

## I.   PLAINTIFF'S ALLEGATIONS

We state the facts as alleged in the complaint. *Tomlinson v. Metropolitan Pediatrics, LLC*, 362 Or 431, 434, 412 P3d 133 (2018). Given the nature of the legal issue on appeal, only the basic facts are necessary to our discussion.

Defendants Brennan, St. Charles, Rueter, High Desert, and MosaicMedical are medical providers that treated Witt at various times. Plaintiff alleges that they violated their statutory standard of care, ORS 677.095(1), as to Witt by prescribing her addictive drugs in excessive amounts and for excessive periods of time without appropriate medical reasons and despite knowing or having reason to know that Witt was abusing the drugs. *See* ORS 677.095(1) ("A physician licensed to practice medicine *** by the Oregon Medical Board has the duty to use that degree of care, skill and diligence that is used by ordinarily careful physicians in the same or similar circumstances in the community of the physician or a similar community."). Plaintiff alleges that defendants' conduct foreseeably caused Witt to develop and continue to suffer from a substance abuse disorder and foreseeably created a risk that she would drive under the influence of the prescribed drugs and other drugs and injure a third party like Stone.

Defendant Walgreen is a pharmacy where Witt filled some of her prescriptions. Plaintiff alleges that Walgreen's pharmacists violated their rule-based standard of care, OAR 855-115-0105(1), as to Witt by continuing to dispense drugs to her despite knowing or having reason to know that Witt had a substance abuse disorder and was misusing and seeking excessive amounts of the drugs. *See* OAR 855-115-0105(1) (requiring practicing pharmacists to "[u]se that degree of care, skill, diligence and reasonable professional judgment that is exercised by a careful and prudent Pharmacist in the same or similar circumstances").[2] Plaintiff alleges that Walgreen's pharmacists' conduct also foreseeably contributed to Witt's substance abuse disorder and foreseeably created a risk that she would drive impaired and injure someone like Stone.

---

[2] OAR 855-115-0105(1) contains identical operative language to *former* OAR 855-019-0200, *renumbered as* OAR 855-115-0105(1) (March 1, 2024), so we use the current numbering.

For purposes of this appeal, the parties treat the question of the physician and medical practice defendants' liability to plaintiff and the question of Walgreen's liability to plaintiff as raising the same legal issue. Under the circumstances, we do the same and do not distinguish among the defendants in that regard, using "statutory standards of care" to refer generally to both ORS 677.095(1) and OAR 855-115-0105(1).

## II.   FORESEEABILITY IN NEGLIGENCE LAW

Before discussing the specific facts of this case further, we pause to provide an overview of certain principles of negligence law that give context to the way in which the issues were framed below and now arise on appeal.

In *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987), the Supreme Court summarized the law of negligence:

> "[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

Thus, in an ordinary common-law negligence scenario, when a person unreasonably creates a foreseeable risk of physical harm, the class of potential plaintiffs to whom the person may be liable depends on the foreseeability of the risk to those plaintiffs. *See, e.g.*, *Moody v. Oregon Community Credit Union*, 371 Or 772, 784, 542 P3d 24 (2023) (one of the elements of negligence is that the plaintiff "'was within the class of persons'" the risk to whom made the defendant's conduct unreasonable (quoting *Solberg v. Johnson*, 206 Or 484, 491, 760 P2d 867 (1988))).

This case implicates the "unless" clause in *Fazzolari*—"unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty." 303 Or at 17. Oregon courts have grappled with that clause for decades, including in the context of medical negligence claims alleging that a

medical provider breached a statutory standard of care to a patient. In the process, the Supreme Court has made clear that foreseeability principles are relevant to claims arising out of a special relationship. "[I]f the special relationship (or status or standard of conduct) does not prescribe a particular scope of duty, then '[c]ommon law principles of reasonable care and foreseeability of harm are relevant.'" *Piazza v. Kellim*, 360 Or 58, 73 n 9, 377 P3d 492 (2016) (quoting *Cain v. Rijken*, 300 Or 706, 717, 717 P2d 140 (1986), quoted with approval in *Fazzolari*, 303 Or at 16-17); *see also Sloan v. Providence Health System-Oregon*, 364 Or 635, 644, 437 P3d 1097 (2019) (same); *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 342, 83 P3d 322 (2004) (same).

But exactly *how* foreseeability principles are relevant to claims arising out of a special relationship is less clear. As discussed in *Piazza*, foreseeability "plays a role in at least two overlapping common-law negligence determinations." 360 Or at 70. First, it plays a role in determining "whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct—formerly described in terms of 'duty' and 'breach' as measures of negligent conduct." *Id.* Second, it plays a role in determining "whether, because the risk of harm was reasonably foreseeable, the defendant may be held liable to the plaintiff for the particular harm that befell the plaintiff"—"a concept that traditionally was referred to as 'proximate' cause and which, in our current analytical framework, operates as a legal limit on the scope of a defendant's liability for negligent conduct." *Id.* at 70.

Thus, although foreseeability is a single concept under *Fazzolari*, it appears in at least two different places when mapped onto the elements of common-law negligence. *See Fazzolari*, 303 Or at 14 (explaining that the court's decision in *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970), "made foreseeable risk the test both of negligent conduct and of liability for its consequences without phrasing the test in terms either of causation or of duty"); *accord Piazza* 360 Or at 70 (noting that foreseeability's two roles in the common-law negligence framework are "overlapping").

There is a fairly well-developed body of case law regarding the second role of foreseeability in special-relationship cases, *i.e.*, what was once referred to as proximate cause. For example, in *Sloan*, the court explained that "when a physician-patient relationship exists," the physician "has an affirmative duty" to meet the statutory standard of care as to the patient, but "[t]here is nothing in the definition of that duty that precludes foreseeability from being a limit on the scope of liability," and "the fact that physicians have a specified duty of care does not mean that foreseeability is irrelevant in medical negligence cases."[3] 364 Or at 644-45. In *Piazza*, the defendants had a special relationship with the decedent, and the issue was whether the complaint "alleged facts sufficient, if proved, to permit a jury determination that reasonable persons in defendants' positions would have foreseen a risk to [the decedent]'s safety of the kind of harm that befell her." 360 Or at 73-74 (internal quotation marks omitted)). In *Oregon Steel Mills, Inc.*, 336 Or at 343-47, an accounting firm allegedly breached its duty to a client, resulting in the delayed sale of the client's stock, and the Supreme Court held that the firm could not be held liable for losses caused by a decrease in the stock price during the period of delay, because the price drop was attributable to market forces and not a reasonably foreseeable result of the delay.

The case law is still developing regarding the first role of foreseeability in special-relationship cases, *i.e.*, "whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable for that conduct." *Piazza*, 360 Or at 70. This case pertains to that issue. Both below and on appeal, the parties have therefore focused their arguments on two cases that address that

---

[3] In *Fazzolari*, the court explained that "duty" is a conclusory term that stands in for either a circumstance-specific judicial evaluation of foreseeability or a categorical limitation on liability with articulable and reasoned origins. 303 Or at 17 ("'Defendants sometimes deny liability *** by arguing that although they may have breached a duty to someone, it was not a "duty *to*" the plaintiff. But that argument can be more directly phrased in terms of foreseeability, and perhaps other reasons for extending or limiting the scope of liability for defendant's negligence, than by using the conclusory word "duty" as a premise.'" (Quoting *Cain*, 300 Or at 715.)). However, as it did in *Fazzolari*, the court has continued to use the word "duty" to describe the obligations imposed by special relationships and other articulable and reasoned limits on liability.

issue—*Zavalas v. Dept. of Corrections*, 124 Or App 166, 861 P2d 1026 (1993), *rev den*, 319 Or 150 (1994), and *Tomlinson*, 362 Or 431—which we discuss at length in our analysis.[4]

### III.    THE TRIAL COURT'S RULINGS

We return to the specific facts of this case. As previously described, plaintiff brought negligence claims against defendants relating to Stone's death. Except for MosaicMedical, each defendant moved to dismiss the claims against them under ORCP 21 A(1)(h), on the ground that the alleged facts failed to state a claim because Stone was a member of the public, not defendants' patient.[5] MosaicMedical filed its motion later than the other defendants and, due to the timing, styled it a motion for summary judgment under ORCP 47 C, but it was "functionally equivalent to a motion to dismiss for failure to state a claim," so it is treated the same and subject to the same standard of review.[6] *Johnson v. Johnson*, 302 Or 382, 388 n 5, 730 P2d 1221 (1986).

As grounds for dismissal, defendants argued that the complaint alleges that defendants violated their standards of care as to Witt, rather than Stone, and that they could not be held liable for Stone's death when Stone was not their patient and, consequently, they owed no duty to Stone.

The trial court granted defendants' motions. In short, the court concluded that, as to professional negligence

---

[4] The court has also held that foreseeability determines how far liability extends in cases involving a somewhat different special relationship scenario—one in which the defendant's special, usually custodial, relationship with an actor creates an affirmative duty to protect the general public from foreseeable risks arising from the actor's conduct. *See, e.g.*, *Buchler v. Oregon Corrections Div.*, 316 Or 499, 506-07, 853 P2d 798 (1993) (risk of physical injury to members of the public arising from negligently allowing an inmate to escape from custody was not foreseeable because the defendant had no knowledge or reason to know that the inmate would be violent); *Cain*, 300 Or at 709 (accepting custody of dangerous psychiatric patient pursuant to a statute created a duty to use reasonable care to treat him and control his acts, and, consequently, protect the general public from foreseeable risks that he created).

[5] ORCP 21 A(8) was renumbered ORCP 21 A(1)(h) effective January 1, 2022. The relevant language is identical, so we use the current numbering.

[6] The form of MosaicMedical's filing is not at issue. However, to promote good practice, we note that, when challenging the sufficiency of a complaint, "the better practice might be to file a motion to dismiss under ORCP 21A[(1)(h)] or for a judgment on the pleadings under ORCP 21B." *Johnson*, 302 Or at 388; *Payless Drug Stores v. Brown*, 300 Or 243, 246, 708 P2d 1143 (1985) (similar statement).

claims, foreseeability is not relevant to determining liability in the first instance. The court viewed existing Oregon case law as recognizing a "general rule that medical professionals are not liable to non-patient third parties for their professional negligence"—a no-duty rule—with a narrow exception that turns not on foreseeability but on case-by-case factors that the court identified in *Tomlinson*.

## IV.   THE PARTIES' ARGUMENTS ON APPEAL

On appeal, plaintiff challenges the dismissal rulings, arguing that there is no general rule that medical professionals are not liable to nonpatient third parties for their professional negligence and that, in these circumstances, defendants can be held liable if plaintiff proves his allegations. Plaintiff relies on our decision in *Zavalas* and argues that the Supreme Court's later decision in *Tomlinson* is distinguishable on the facts but legally consistent with *Zavalas*. Ultimately, plaintiff contends that defendants' status as medical providers does not insulate them from the obligation that everyone has not to unreasonably create foreseeable risks of physical harm to others.

In response, defendants argue that, except in very limited circumstances, physicians and pharmacists owe a duty only to their patients, that any potential liability to third parties is narrowly circumscribed by *Tomlinson*, and that *Zavalas* is largely irrelevant because it predates *Tomlinson*.

## V.   LEGAL ANALYSIS

Plaintiff argues that this case is controlled by *Zavalas*, a 1993 decision of this court, and defendant argues that it is controlled by *Tomlinson*, a 2018 decision of the Supreme Court. We therefore proceed to discuss those cases.

In *Zavalas*, Shonkwiler caused a car accident while driving under the influence of Xanax and heroin, causing the death or physical injury of several children. 124 Or App at 170. The plaintiffs, on behalf of the children, brought claims against Shonkwiler's physician, alleging that he "was negligent in prescribing Xanax to Shonkwiler when she presented symptoms of 'psychotic illness, depression, chronic bipolar

mental disorder and chronic drug use,' and in authorizing the refill of that prescription." *Id.* The physician argued that he had no duty to the children. *Id.* He asserted that, as a matter of law, "a physician has no duty to third parties" and that, consequently, "a physician is shielded from liability to third parties who claim that the physician's negligent treatment of a patient was the foreseeable cause of their harm." *Id.* at 171.

We disagreed, rejecting the proposition that "that under no circumstances can a physician ever be liable to a nonpatient third party," and noting that we had found no authority for it. *Id.* at 173. To the contrary, we concluded that when a physician prescribes drugs to a patient in violation of their statutory standard of care and, as a result, the patient foreseeably injures third parties, the physician may be liable to the third parties in negligence. *Id.* at 173-74. Under *Zavalas*, "professionals are not entitled to the benefit of an across-the-board 'no duty' rule merely because they are not in privity with those whom their negligent conduct affects." *Delaney v. Clifton*, 180 Or App 119, 124, 41 P3d 1099, *rev den*, 334 Or 631 (2002) (describing the holding of *Zavalas*); *see also Docken v. Ciba-Geigy*, 86 Or App 277, 280-81 739 P2d 591, *rev den*, 304 Or 405 (1987) (where the plaintiff's decedent died as a result of taking a drug prescribed for his brother, it was error to dismiss the plaintiff's negligence claims against the prescribing physician, pharmacy, and drug manufacturer, because we could not "say as a matter of law that the harm was not foreseeable or that the complaint fails to allege facts from which a jury could find defendants negligent").

This case is directly analogous to *Zavalas* and appears on its face to be controlled by *Zavalas*. However, defendants argue that *Tomlinson* effectively trumps *Zavalas*, so we next consider *Tomlinson*.

In *Tomlinson*, two parents brought negligence claims against several medical providers who had physician-patient relationships with the parents' first child, but not with the parents themselves. 362 Or at 434. The parents alleged that the defendants had negligently failed to timely diagnose their first child's genetic disorder; that they would not have

had a second child if they had known of the genetic disorder; that they suffered economic and emotional damages as a result of the defendants' negligence, related to their second child having the same genetic disorder; and that their damages were a foreseeable consequence of the defendants' negligence. *Id.* The trial court dismissed the plaintiffs' claim for failure to state a claim. *Id.*

On review, the Supreme Court reversed. As to the parents' claims, the court identified the primary issue in dispute as being whether the parents "had identifiable interests that defendants were legally obligated to protect under the facts alleged in their respective claims." *Id.* at 440. The defendants argued that "a direct physician-patient relationship between the parties" was required and that the plaintiffs could not state negligence claims based "on the foreseeability of the injuries alone." *Id.* at 442.

The Supreme Court agreed on the latter point—that the plaintiffs' negligence claims could not be based on foreseeability alone—"for two reasons." *Id.* The first reason was that "the parents allege[d] only economic and emotional injuries." *Id.* The court cited cases explaining that "liability for purely economic harm must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm," *Oregon Steel Mills, Inc.*, 336 Or at 341 (internal quotation marks omitted), and that liability for emotional injuries cannot be based on foreseeability alone but instead requires "another 'legal source' of liability for the plaintiff to recover emotional distress damages," *Philibert v. Kluser*, 360 Or 698, 703, 385 P3d 1038 (2016). *See Tomlinson*, 362 Or at 442 (citing those cases).

The second reason was that "the parents allege[d] that their injuries resulted from defendants' failure to take affirmative steps to protect them from a risk of harm that defendants did not create—namely, the reproductive risks associated with the parents' preexisting genetic composition." *Id.* at 442-43. The court recognized that distinction as one emphasized in the Restatement. "An actor's conduct creates a risk when the actor's conduct or course of conduct results in greater risk to another than the other would have

faced absent the conduct." *Restatement (Third) of Torts: Phys. & Emot. Harm* § 7 comment o. "[A]ctors engaging in conduct that *creates* risks to others have a duty to exercise reasonable care to avoid causing physical harm." *Restatement* § 7 comment a (emphasis added); *see also Fazzolari*, 303 Or at 17 (generally, "the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably *created* a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff" (emphasis added)). By contrast, an actor who did not create the risk has a duty to protect against it only in limited circumstances: "An actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in §§ 38-44 is applicable." *Restatement* § 37; *see id.* § 40 (describing special relationships); *see also Tomlinson*, 362 Or at 442-43 (citing *Restatement* § 37).

For those two reasons, the *Tomlinson* court agreed with the defendants that, "without some justification for providing legal protection, a person is not generally required to *affirmatively* protect the *economic and emotional* interests of others." *Tomlinson*, 362 Or at 442 (emphases added).

The court disagreed, however, that the parents needed a direct physician-patient relationship with the defendants to state a negligence claim. *Id.* at 443. "A direct physician-patient relationship can be *one* ground for creating affirmative protections of a plaintiff's economic and emotional interests under negligence law." *Id.* (emphasis in original). However, "[i]t does not necessarily follow that a direct physician-patient relationship is the *only* such ground available to the parents." *Id.* (emphasis in original); *see also id.* at 444-45 (rejecting the defendants' proposition that "the very essence of medical services is to diagnose and treat *patients* and not to benefit nonpatients" (emphasis in original)).

To the contrary, the *Tomlinson* court concluded that, "in carrying out a professional obligation to a client, the professional may be required to protect the interests of a third party as well." *Id.* at 445. Whether the professional is required to do so must be decided on a case-by-case basis. *Id.*

The court identified three factors that, upon consideration, led it conclude that the defendants *were* potentially liable to the parents in *Tomlinson*: (1) "whether the relationship between the parties is a type of relationship that generally entails a mutual expectation of service and reliance"; (2) "whether recognizing such a claim would interfere with or impair the loyalties that the professional owes to the client"; and (3) "as in other circumstances involving liability for economic and emotional injuries," "whether the potential plaintiffs were identifiable to the defendant or otherwise could be defined as a class that avoids indeterminate liability."[7] *Id.* at 446.

We agree with plaintiff that *Zavalas* and *Tomlinson* are not in conflict. The *Tomlinson* court diverged from the foreseeability path laid in *Fazzolari* and went down a different path for two specific reasons—because the parents sought damages only for economic and emotional harm, not physical injury, and because the defendants did not create the risk to which the parents were exposed. *Id.* at 442. It was each or both of those circumstances that led the court to conclude that more than foreseeability was required for the parents to state a negligence claim against the defendants. Moreover, we understand the factors discussed in *Tomlinson* to be relevant only in such circumstances. That is, when the typical foreseeability framework articulated in *Fazzolari* applies—when the plaintiff alleges that the defendant's conduct *created* a risk to a universally protected interest like the interest in avoiding physical harm—that is the end of the matter, and there is no need to consider the *Tomlinson* factors.

Neither of the circumstances from *Tomlinson* exists in this case. Here, plaintiff seeks damages for physical injury. *See Philibert*, 360 Or at 703 (the interest in being "free from physical harm at the hands of another" is "the simplest legally protected interest" (internal quotation marks omitted)). Further, unlike in *Tomlinson*, defendants allegedly *created* the risk to Stone by negligently prescribing

---

[7] Regarding the third factor, the court cited *Philibert*, where it observed that "'[e]motional distress, like economic loss, ripples throughout society as a foreseeable result of negligent conduct. Without some limiting principle in addition to foreseeability, permitting recovery for emotional injuries would create indeterminate and potentially unlimited liability.'" *Id.* (quoting *Philibert*, 360 Or at 704).

and dispensing drugs to Witt.[8] That is a critical distinction under *Tomlinson* and the Restatement.

Ultimately, we understand *Tomlinson* to hold that, because of the special relationship between physicians and patients, a physician's duty to protect a patient extends beyond risks created by the physician—and that affirmative duty also may extend to third parties in some circumstances. We also understand *Tomlinson* to hold that, when only economic or emotional damages are sought, foreseeability alone is not enough. We do *not* understand *Tomlinson* to hold that a physician has no duty to protect nonpatient third parties from risks created by the physician. Nor do we understand *Tomlinson* to hold that more than *Fazzolari* foreseeability is required to hold a physician liable for breaching a statutory standard of care in treating a patient under circumstances that unreasonably create a foreseeable risk of physical injury to a third party.[9]

We emphasize that this is a case in which defendants allegedly breached their statutory standards of care to their patient. It is not a case where, for example, a physician complied with the standard of care for prescribing drugs to a patient and the patient then physically injured a third party—a situation in which imposing liability would create a much greater risk of interfering with or impairing

---

[8] Another case in which the medical providers did not create the risk is *Maltais v. PeaceHealth*, 326 Or App 318, 532 P3d 510, *rev den*, 371 Or 509 (2023). There, medical providers were allegedly negligent in failing to admit a dangerous patient to the hospital, and that person subsequently injured a third party. The medical providers themselves did not create the risk to the third party—rather, the danger existed due to the patient's dangerousness—so we applied the *Tomlinson* factors to determine whether she could state a negligence claim against them. *Id.* at 326-28.

[9] To the extent that defendants rely on *Sloan* and *Mead v. Legacy Health System*, 352 Or 267, 276, 283 P3d 904 (2012), those cases are distinguishable because they did not involve third parties. *See Sloan*, 364 Or at 645 (discussing a physician's "specified duty of care" and "affirmative duty" to patients in the context of a claim brought on behalf of a patient who allegedly died as a result of medical negligence); *Tomlinson v. Metropolitan Pediatrics, LLC*, 245 Or App 658, 673, 366 P3d 370 (2015), *aff'd*, 362 Or 431, 412 P3d 133 (2018) ("the issue in *Mead* was whether the plaintiff—whose negligence claim was premised on the existence of a physician-patient relationship—had demonstrated the existence of that relationship," and "the court had no reason to—and did not—address the cognizability" of a third-party claim). Moreover, as to *Mead*, it cannot be read in a way that conflicts with the Supreme Court's subsequent decision in *Tomlinson*, 362 Or at 445.

the physician's duties to the patient. *Cf. Tomlinson*, 362 Or at 466 (considering whether the potential for liability to third parties "would interfere with or impair the loyalties that the professional owes to the client"). This case involves defendants' alleged failure to comply with their statutory standards of care in treating and dispensing to their patient, Witt, and an allegedly foreseeable resulting physical injury to a third party, Stone.

In sum, *Zavalas* is controlling in this case, and *Tomlinson* does not change that. The trial court erred in dismissing plaintiff's negligence claims against defendants. If this case goes to trial, it will be for the jury to decide as to each defendant "whether the defendant's conduct unreasonably created a foreseeable risk of the subsequent conduct [by Witt], and the type of harm that resulted from it." *Scott v. Kesselring*, 370 Or 1, 21-22, 513 P3d 581 (2022).

Reversed and remanded.